UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLUP MICHAEL HICKS,

        Movant,

                                      File No. 1:13-cv-1279

v.

                                       HON. ROBERT HOLMES BELL

UNITED STATES OF AMERICA,

        Respondent.

_____/

## O P I N I O N

This matter comes before the Court on Movant Phillup Michael Hicks' motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him by this Court. (ECF No. 1.) For the reasons that follow, the motion will be denied.

## I.

On March 11, 2009, Movant was indicted on one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*United States v. Hicks*, No. 1:09-cr-61, Indictment,  ECF No. 1.) After trial, Movant was found guilty and sentenced on September 1, 2009, to 96 months' imprisonment and three years of supervised release. (ECF No. 29.) The Court also imposed a $100 special assessment. (*Id.*) Movant's conviction was affirmed on appeal. *See United States v. Hicks*, 495 F. App'x 633 (6th Cir. 2012). After the Sixth Circuit affirmed Movant's conviction, he filed a *pro se* motion for a new trial. (ECF No. 49.)

This motion was denied. (ECF No. 51.) The Sixth Circuit has succinctly summarized the

pertinent facts:

> On April 27, 2008, Priscilla Claudio and her boyfriend, Phillup Hicks, who had previous felony convictions for breaking and entering and fleeing the police, were at a local club/bowling alley in Lansing, Michigan to celebrate a friend's birthday. Priscilla Claudio and Hicks had been drinking and, at some point in the night, Priscilla got into a fight with two individuals, Veronica and Pablo, at the club, sustaining a "busted lip and a black eye."

> Priscilla called her father and brother, Joseph Claudio, after the fight. Joseph Claudio, who was 17 years old at the time, drove over to the club/bowling alley with his friend Terry Morgan. During trial, both admitted they had been drinking that day and night. Priscilla Claudio and Hicks got into the car with Joseph Claudio and Terry Morgan and drove to Veronica's house.

> At this point during the testimony, the three witnesses provided slightly different versions of the events. Priscilla Claudio stated that after learning that Veronica and Pablo were not at the house, the group drove to another nearby location where they thought Veronica and Pablo might be. Veronica's van, which Priscilla Claudio recognized from the club, was parked in the driveway. Priscilla Claudio testified that Hicks, Morgan, and Joseph Claudio got out of the car to throw rocks at the van. Though she testified that she did not see anyone with a gun, she stated that at that point she heard something that sounded "kind of like a firework," and that she smelled something like "burnt rubber." After this, the group got back in the car, with Hicks driving. Priscilla testified that they were stopped almost "immediately" by a police officer. At that point, Hicks fled.

> Joseph Claudio testified that Hicks began driving on the way to the second house, earlier than Priscilla Claudio had suggested. Joseph Claudio testified that Terry Morgan was in the front passenger seat, that he was behind Terry, and that Priscilla Claudio was behind Hicks. On direct examination, Joseph Claudio stated that everyone except him got out to collect and throw rocks at the van, but on cross-examination he altered his story to testify that only Priscilla Claudio threw the rocks. The group then drove slowly past the van, at which point "Terry leaned his seat back a little bit," and then Hicks "just started firing out the window." Hicks then drove away. After seeing a cop "coming the opposite way," Joseph Claudio first testified that he "t[ook] the

2

gun from the front seat" then corrected his testimony to say that the gun was "passed . . . back" to him and that Hicks told Claudio to throw the gun out of his window. After they were stopped by the police officer, Terry Morgan put the car in park while Hicks fled.

Terry Morgan's testimony was similar to Joseph Claudio's. Like Joseph Claudio, Morgan stated that it was Hicks who was driving after the first stop. Unlike Joseph and Priscilla Claudio, Morgan testified that the group gathered rocks from the bowling alley and Morgan did not remember any rocks being picked up at the second house. Like Joseph Claudio, however, Morgan testified that it was Hicks who fired the gun out of Morgan's front passenger window after Hicks had told him to lean back. Morgan also agreed with Joseph Claudio that Hicks handed the gun back to Joseph and asked him to throw it out of his window while Morgan put the car in park.

Officer Ryan Wilcox of the Lansing Police Department stated that he observed the vehicle driven by Hicks fail to come to a complete stop at a stop sign. Officer Wilcox tried to pull the car over, but instead of slowing down the vehicle accelerated. Officer Wilcox followed, and "[a]s the vehicle came to an abrupt stop," a "silver object" was thrown "out of the back passenger side window." The driver then exited the vehicle and fled. As there were three individuals in the vehicle and a firearm had been throw[n], Officer Wilcox requested more units to assist.

Other officers arrived and after searching the area located a Sable Baby, .22 caliber revolver with one live round and five spent casings in the wheel. The gun was located "maybe ten yards" from the vehicle. A small handgun case was also found underneath the driver's side seat of the vehicle. There were no fingerprints on the shells or on the gun.

*Hicks*, 495 F. App'x at 635-36 (internal citations omitted).

Movant timely filed this § 2255 motion on November 25, 2013. (*United States v. Hicks*, No. 1:13-cv-1279, ECF No. 1.) Movant has raised five separate ineffective assistance of counsel claims pertaining to trial counsel's preparation of and performance during trial. The government has filed a response in opposition. (ECF No. 20.)

3

## II.

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the petitioner shows either (1) "cause" and "actual prejudice" or (2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Frady*, 456

4

U.S. 152, 167–68 (1982). To satisfy the "cause" test, a petitioner must show that "some objective factor external to the defense" kept him from raising the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). An ineffective assistance of counsel claim, however, is not subject to the procedural default rule. *Massaro*, 538 U.S. at 504. An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Id.*

A court is generally required to grant a hearing to determine the issues and make findings of fact and conclusions of law on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255. Section 2255 does not require a full blown evidentiary hearing in every instance. "Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made ." *Smith v. United States*, 348 F.3d 545, 550–51 (6th Cir. 2003) (quoting *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993)). No evidentiary hearing is required if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also

5

conducted the trial, the judge may rely on his or her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

### III.

Movant seeks relief based on five separate claims of ineffective assistance of counsel. To make out a claim of ineffective assistance of counsel, Movant must show that counsel's representation fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* To establish prejudice, Movant must show a reasonable probability that counsel's errors affected the outcome of the proceeding. *Id.* at 696.

### A. Failure to Investigate

Movant's first and fifth counts of ineffective assistance of counsel argue that his attorney provided ineffective assistance of counsel for failing to investigate (1) "the phone

recordings belated[ly] provided to the defense the first day of trial"; and (2) the owner of the firearm in question in this case. (Mot. to Vacate at 8, ECF No. 1.)

With respect to counsel's obligations to investigate matters, the Supreme Court has stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions[.]" *Id.*

### 1. Phone Recordings

Movant contends that he made counsel aware of jailhouse phone recordings between Movant and two of the Government's "star witnesses," Joseph and Priscilla Claudio. Movant states that he made counsel "aware of their importance by informing him of impeachment and possible exculpatory evidence" that the recordings contained (Mot. to Vacate at 10, ECF No. 1), and, therefore, the failure to investigate the recordings was ineffective assistance of counsel.

Movant's counsel asserted that he did not become aware of the tapes until during trial, ten minutes after the Government disclosed that they had received the recordings. (*United States v. Hicks*, No. 1:09-cr-61, Trial Tr. at 76, ECF No. 37.) At that point in the trial, Priscilla Claudio had testified, but Joseph Claudio and Terry Morgan had not. *Hicks*, 495

7

U.S. at 636. This Court allowed counsel to review the tapes. (*United States v. Hicks*, No. 1:09-cr-61, Trial Tr. at 77, ECF No. 37.) "[A]ll parties ultimately agreed to listen to the tapes and respond accordingly the next day at trial . . . Defense counsel had an opportunity to cross-examine Priscilla, and at no point did defense counsel request more time to review the tapes." *Hicks*, 495 F. App'x at 638 (citing Trial Tr. at 176, 179, 186.)

Still, Movant contends that, "without the investigation, [Movant] and his attorney were not made aware of the jail-house recordings or what they contained and their value to his trial until it was almost impossible to have any use at his trial." (Mot. to Vacate at 9.) Movant raised a similar argument on the appeal of his conviction. There, Movant argued that "the government's mid-trial disclosure of jailhouse recordings between himself, Priscilla Claudio, and Tracy Hicks violated his due process rights under *Brady*." *Hicks*, 495 F. App'x at 638. The court of appeals determined that Movant's *Brady* claim lacked merit because Movant "had enough time to review the tapes, and could have asked for a continuance if more time was necessary[.]" *Id.* at 639.

For similar reasons, this Court finds that Movant's ineffective assistance of counsel claim fails. To prevail, Movant must show that counsel's deficient performance prejudiced him and "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Even assuming that counsel failed to timely investigate the recordings, because counsel still had time to review  the tapes and respond accordingly the next day, no prejudice to Movant occurred.

### 2. Owner of the Firearm

Movant also argues that counsel was ineffective for failing to investigate the true owner of the firearm. Movant contends that the true owner could have provided testimony that he gave the firearm to Joseph Claudio rather than Movant, "thus raising doubt as to Joseph Claudio's and Terry Morgan's testimony that '[Movant] had the gun.'" (Mot. to Vacate at 12, ECF No. 1.)

While counsel's level of investigation into the owner of the firearm is unclear, assuming that counsel did not conduct an investigation, and "applying a heavy measure of deference to counsel's judgments," *Strickland*, 466 U.S. at 691, this decision was reasonable, and Movant's claim therefore fails. Movant was indicted on one count of felon in *possession* of a firearm. Regardless of who the original owner of the firearm was, and regardless of who the original owner gave the firearm to, the sole issue was whether Movant possessed the firearm. *See United States v. Crowell*, 493 F.3d 744, 748 (6th Cir. 2007) (noting that to sustain a § 922(g)(1) conviction, it must be shown that a defendant "knowingly *possessed* the firearm and ammunition specified in the indictment").

Further, Movant has failed to show that the decision not to investigate the true owner of the firearm prejudiced him. Even assuming that the true owner of the firearm would have testified that he gave the firearm to Joseph Claudio, the jury was presented with evidence that Claudio was not in possession of the firearm at the time shots were fired. The police officer testified that Movant was driving the car before fleeing and that the handgun case was found

underneath the driver's seat. (*United States v. Hicks*, No. 1:09-cr-61, Trial Tr. at 11, 27, ECF No. 37.) Joseph Claudio was in the backseat of the car. (*Id.* at 16, 22-23). Both Joseph Claudio and Terry Morgan testified that Movant was in possession of the gun, that Movant was in the driver's seat of the vehicle when shots were fired, and that Movant shot the gun out the front passenger seat. (*Id.* at 92-93, 118-19, 150-51.) Given the evidence that was presented showing Movant was in possession of the firearm, Movant has not "met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 696.

## B. Failure to File Motions

Movant's second and fourth claims of ineffective assistance of counsel arise from (1) counsel's failure to move the court for a hearing as to why the government opted not to use the phone recordings at the eleventh hour, and (2) counsel's failure to request more time or move for a continuance to determine if a different trial strategy should have been used in light of the discovery of the phone recordings.

### 1. Motion for Hearing

Movant contends that counsel's "failure to inquire why the Government elected not to use the recordings, at the eleventh hour after admitting them in the midst of the trial," was "significant," and that "counsel ineffectively lost an opportunity to effectively demonstrate the Government's attempt to use them, among other things." (Mot. to Vacate at 10-11.) As

10

such, Movant argues that counsel should have moved the Court for a hearing as to why the government opted not to use the evidence.

Movant's claim fails. Movant has not pointed to any authority requiring counsel to object to evidence that the prosecution will *not* introduce. It is the government's burden to introduce evidence showing that a defendant is guilty. Trial courts do not conduct hearings to determine why the prosecution is not introducing certain evidence. And "counsel cannot be said to be deficient for failing to take frivolous action, particularly since a frivolous effort takes attention away from non-frivolous issues." *United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004).

To the extent that Movant argues that counsel should have moved for a hearing because he should have "presumed [the recordings] were exculpatory and material evidence," (Mot. to Vacate at 8), Movant has already raised a *Brady* claim on this issue to the Sixth Circuit. This claim failed, in part, because "Movant had sufficient time to prepare his defense." Counsel and Movant reviewed the tapes, and counsel noted that if he could not finish reviewing the tapes before the Marshal had to take Movant back, counsel could "stay there later than they want to leave." (*United States v. Hicks*, No. 1:09-cr-61, Trial Tr. at 175-76, ECF No. 37); *see also Hicks*, 495 F. App'x at 639 ("[Movant] would stay at the court until 5:30 p.m., so defense counsel could speak to him, and the prosecution and defense would listen to the tapes between the first and second days of trial."). Accordingly, counsel would have been aware of any "exculpatory and material evidence" present on the tapes, and

11

there would have been no need to move the Court for a hearing regarding their content or why the prosecution was not introducing them.

### 2. Motion for a Continuance

Movant also claims that counsel was ineffective by not moving for a continuance of the trial after the tapes were introduced. Movant now contends that counsel told Movant that the tapes were blank and contained only static. The morning after reviewing the tapes together, Movant had the opportunity to raise this issue and did not indicate that he believed counsel was withholding material on the tapes from him. When Movant was asked if he was satisfied with counsel's representation, he responded, "Yes, I am, Your Honor." (Tr. at 181.) The Sixth Circuit also noted that Movant "agreed to the solution offered by the district court regarding the delayed disclosure of the prison phone recordings." *Hicks*, 495 F. App'x at 641.

In total, the recordings were approximately three hours in length. (Tr. at 173.) Counsel had sufficient time to review the tapes. (*Id.* at 175-76); *see also Hicks*, 495 F. App'x at 639 ("Despite the delayed disclosure of the tapes, [Movant] had sufficient time to prepare his defense."). Accordingly, counsel's decision not to move for a continuance was reasonable.

Moreover, even if Movant could establish that counsel's failure to move for a continuance was not reasonable, Movant has failed to show prejudice. Again, the Sixth Circuit addressed a similar issue relating to Movant's *Brady* claim. There, the court concluded that because Movant could not "credibly explain . . . how the tapes would have

12

undermined his guilty verdict, [Movant] has not proven prejudice." *Id.* This Court agrees.

Movant references a call that Movant's mother had with Priscilla Claudio "evincing

[Movant's] innocence." During this phone call, Movant's mother stated:

> [Priscilla] told me on the way from seeing you. The very first time that me and
> her went out to see you at that jail ... on my way back I said to her, you know,
> 'What's going on?' I said, 'Did Phillup really do this?' She said, 'No.' I said,
> 'Do you know who did it?' She's like, 'Yeah.' I'm like, 'Who?' She said, 'My
> brother.' Phillup, she told me that. That came out of her mouth. You didn't
> even tell me. She did.

(Call No. 4 at 53, ECF No. 45.) This statement, however, would not have been admissible

to prove Movant's innocence during trial because it "was 'hearsay within hearsay.'" *Hicks*,

495 F. App'x at 640. Movant also notes that counsel "himself spoke with Priscilla Claudio,

and was informed that [Movant] did not have a gun and 'she does not know why her brother

lied.'" (Mot. to Vacate at 6, ECF No. 1.) Movant's argument fails to the extent he claims that

these phone calls could have been introduced as evidence of his innocence. This phone call

would also be inadmissible hearsay if introduced for this purpose because it is a statement

made out of court and offered to prove the truth of the matter asserted–that Movant is

innocent. *See* Fed. R. Evid. 801(c).

To the extent Movant argues that the phone recordings could have been used to

impeach Priscilla Claudio, the argument is addressed below.

## C. Failure to Cross-Examine/Impeach

Movant's third count of ineffective assistance of counsel alleges that counsel was

ineffective when he "failed to impeach Priscilla Claudio, or use the phone recordings to

contradict the version of events put forth by Joseph Claudio and Terry Morgan . . . to show that it could be possible that Priscilla Claudio only testified to what the Government expected of her to testify to." (Mot. to Vacate at 11.) "The cross-examination of a witness is a delicate task; what works for one lawyer may not be successful for another. Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002).

Counsel extensively cross-examined Priscilla prior to the discovery of the phone call recordings. (*United States v. Hicks*, No. 1:09-cr-61, Trial Tr. at 53-68, 72-75, ECF No. 37.) Priscilla testified that she did not see anybody fire a gun from within the car. (*Id.* at 66.) She also testified that she never saw Movant pass a gun back to Joseph Claudio to throw out the window. (*Id.* at 68.) She stated, "I was pretty intoxicated. Everything just seems like, like a dream, like I just see parts of the night. But like I said, I don't recall anyone doing anything from the vehicle. (*Id.* at 74.) In short, she did not argue that Movant was guilty, but she also did not proclaim his innocence.

The next day, after the tapes were discovered and listened to, the prosecution called Priscilla back to the stand:

> **Q**: Okay. The testimony that you gave yesterday was not entirely truthful as to a few issues, was it not?

14

**A**: No, it wasn't.

(*Id.* at 185.) This untruthful testimony related to the nature of her relationship with Movant and whether she had discussed the case with Movant. On cross-examination, counsel then asked only two questions:

**Q**: But the essence of what you saw on that night, is that still true?

**A**: Yes.

**Q**: And you have a close and loving relationship with your brother?

**A**: Yes

(*Id.* at 186.) This line of questioning was presumably designed to insinuate that Priscilla was lying about her recollection of the events in order to protect her brother.

### 1. First Call Between Movant and Priscilla

The first phone call between Priscilla and Movant that Movant's brief contends should have been introduced for impeachment purposes, (Mot. to Vacate at 9, ECF No. 1), contains statements consistent with Priscilla's testimony during trial. Accordingly, counsel's decision to not introduce this phone call was reasonable:

**[Movant]:** Yeah. I just told him flat out I didn't do shit.

**Priscilla:** Right.

**[Movant]**: I told him I didn't have–*I didn't see no gun, I didn't know nothing about no gun*. That's all there is to it.

**Priscilla:** *Yeah. Yeah, I told him the same thing.* He was like, why did your brother tell them that it was him? I was like, I don't know. I was like, to tell you the truth, my brother kind of doesn't really talk to me about it, you know

15

what I mean? Like because he knows what I say and he doesn't–he's kind of like–hello?

(Call No. 3 at 37-38, ECF No. 1-2) (emphasis added). During that same phone call, the following exchange occurred:

> **Priscilla:** I put you–we all know we put you there.
>
> **[Movant]:** Yeah.
>
> **Priscilla:** *But I never said–I told them I've never seen a weapon. I've never seen you with a weapon. I've never seen my brother with a weapon, none of that*.
>
> **[Movant]:** Yeah. That's what I told my lawyer.

(*United States v. Hicks*, No. 1:09-cr-61, Call No. 3 at 41, ECF No. 45) (emphasis added); *see also Hicks*, 495 F. App'x at 642 ("[A]t various points during the calls, she repeatedly says that she did not see who had the gun, a story that is consistent with her testimony.") (citation omitted).  Similar to her testimony at trial, the phone call demonstrates that Priscilla knew nothing about what happened that night. Accordingly, counsel's failure to "impeach" or cross-examine Priscilla about this phone call was not prejudicial, as there was nothing to impeach.

### 2. Second Call Between Movant and Priscilla

Movant also argues that a different phone call between himself and Priscilla should have been introduced because it shows Priscilla was harassed and that "the government needed Priscilla to give the testimony she gave in which to have [Movant] found guilty as charged." (Mot. to Vacate at 11, ECF No. 1.) In these phone calls, Priscilla stated that the

16

government is "basically harassing me too," and that they were "mean to [her]." (*Hicks v. United States*, No. 1:13-cv-1279, Call No. 1 at 12-13, ECF No. 1-2.) Because these phone calls do not demonstrate that the government influenced Priscilla to falsely testify, they are not prejudicial, and counsel was not ineffective for failing to introduce evidence of these calls.

### 3. Call Between Movant and Movant's Mother

Finally, there is the call between Movant and Movant's mother. Movant's mother told Movant that Priscilla told her that Joseph Claudio was the responsible party. (*United States v. Hicks*, No. 1:09-cr-61, Call No. 4, ECF No. 45.) Counsel's decision on how to impeach Priscilla "is a matter of trial tactics." Movant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Movant has not met this standard. The jury heard testimony from each person that was present when the crime was committed. Two witnesses testified that Movant was in possession of the gun. A handgun case was found under the seat that Movant was sitting in. The jury heard Priscilla repeatedly say that her level of intoxication affected her recollection of the events. To avoid a hearsay issue, the jury would have been able to consider the phone call for the limited purpose of impeaching Priscilla–a witness who never testified that Movant was in fact guilty of possessing the firearm. The jury could not have considered this

phone call as evidence that Movant did not possess the gun or that Joseph Claudio did possess the gun. Given all of the evidence presented to the jury establishing Movant's guilt, the introduction of a statement made by Movant's mother while sympathizing with him, considered solely as impeachment evidence, does not lead to a finding that there is a reasonable probability that the outcome of the proceeding would have been different if the phone call was introduced.

Counsel had already implied that Priscilla was biased toward her brother, and after counsel had a chance to listen to the tapes, he affirmed that Priscilla was sticking to her account of the events given on the first day of trial. (*United States v. Hicks*, No. 1:09-cr-61, Trial Tr. at 186, ECF No. 37.) Counsel had already extensively cross-examined Priscilla about her recollection of the events that took place the night Movant was arrested. Accordingly, the Court agrees with the Sixth Circuit's determination that, "though Hicks claims that the phone recordings create a reasonable likelihood that his conviction was based upon false testimony, this is not the case." *Hicks*, 495 F. App'x at 638-39.

Because counsel's decision to not introduce the phone calls that Movant references as impeachment evidence was reasonable and did not prejudice Movant, Movant's claim of ineffective assistance of counsel on this ground fails.

**IV.**

For the reasons stated above, Movant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him by this Court (ECF No. 1) will be denied.

The Court further finds that "the files and records of the case conclusively show that the prisoner is entitled to no relief" and, therefore, a hearing to determine the issues and make findings of fact and conclusions of law is not necessary. *See* 28 U.S.C. § 2255.

      A judgment will enter consistent with this Opinion.


Dated: <u>November 24, 2015</u>          <u>/s/ Robert Holmes Bell</u>
                                             ROBERT HOLMES BELL
                                             UNITED STATES DISTRICT JUDGE